**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KEALA KILAULANI**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**TIFLIS TRANSPORTATION INC.**,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Named Plaintiff Keala Kilaulani ("Named Plaintiff"), individually and on behalf of others similarly situated, for this collective and class action Complaint against Defendant Tiflis Transportation Inc. ("Defendant"), states and alleges as follows:

## INTRODUCTION

1. This case challenges certain policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.,* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*

2. Named Plaintiff brings this case as a collective action individually and on behalf of other similarly situated persons who may join this case pursuant to 29 U.S.C. § 216(b).

3. Named Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IWPCA and IMWL, individually and on behalf of other similarly situated persons employed by Defendant.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Named Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant is domiciled in this District and Division.

6. This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

### A. Named Plaintiff

7. Named Plaintiff Keala Kilaulani's written Consent to Join this Action is attached hereto as **Exhibit A**.

8. Named Plaintiff was employed by Defendant from approximately late 2025 through February 7, 2026, as a truck driver, misclassified by Defendant as an independent contractor.

9. At all relevant times, Named Plaintiff and other similarly situated employees were "employees" within the meaning of the FLSA and Illinois law, notwithstanding Defendant's misclassification of them as independent contractors. The economic reality of the working relationship, as set forth below, establishes employment in every material respect.

10. At all relevant times, Named Plaintiff and other similarly situated drivers were non-exempt employees entitled to minimum wage protections of the FLSA. Although the motor carrier exemption, 29 U.S.C. § 213(b)(1), exempts certain drivers from the FLSA's overtime provisions, it does not exempt them from the minimum wage requirement of 29 U.S.C. § 206, in that they were engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**B. Defendant**

11. Defendant Tiflis Transportation Inc. is an Ohio for-profit corporation with its headquarters at 8200 Beckett Park Dr., Suite 111, West Chester, OH 45069. Defendant can be served through its Ohio registered statutory agent: Bisson Holding LLC, 8200 Beckett Park Dr., Suite 111, West Chester, OH 45069.

12. At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

13. At all relevant times, Defendant has been an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that it has employees engaged in commerce or in the production of goods for commerce.

14. Defendant has an annual gross volume of sales made or business done of not less than $500,000.00.

## FACTUAL ALLEGATIONS

**A. Defendant's Business**

15. Defendant is an interstate motor carrier (USDOT 3945218 / MC 1466444) that hauls general freight across the United States using a fleet of approximately 48 trucks operated by 50 drivers.[1]

16. Defendant's fleet consists of company-owned and term-leased tractors (Kenworth T680 and Freightliner Cascadia, model years 2023-2026) and company-owned and term-leased 53-foot trailers. Defendant's drivers do not own the trucks or trailers they operate. Instead, the equipment is assigned to drivers by Defendant.

---

1 https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&query_string=3945218 (last visited 4/23/26).

17. While Defendant's headquarters are listed as 8200 Beckett Park Dr., Suite 111, West Chester, OH 45069, in Ohio Secretary of State filings, Defendant's owner and primary dispatcher operates from the Chicago, Illinois area. Indeed, Defendant's Facebook page lists 1717 North Naper Blvd, Naperville, IL 60563, as its address.[2] Moreover, upon information and belief, all of Defendant's drivers are dispatched from Illinois, receive their load assignments from personnel in Illinois, attend mandatory orientation and training in Illinois, and are subject to day-to-day direction and control from Illinois.

18. Despite the employment relationship between Defendant and its drivers, Defendant classifies all of its drivers as independent contractors, requires them to form their own limited liability companies, and forces them to sign a standard-form "Independent Contractor Driver Agreement" ("ICD Agreement").

19. Defendant pays its drivers a flat rate of $0.60 per mile with no deadhead compensation and no percentage of gross revenue. Defendant then subjects those meager earnings to a battery of deductions for items that are ordinary costs of Defendant's business – including weekly charges for "IT Services," "OCAC insurance," security deposits, onboarding costs, orientation travel, drug-test transportation, tablets, and punitive fines for dozens of specified infractions. The cumulative effect of those deductions reduces drivers' effective hourly compensation below the federal and state minimum wage.

20. Defendant requires all drivers to attend a mandatory two-to-three-day orientation at its operational base in Illinois before they may begin driving. This orientation includes company policy instruction, document execution, and a DOT-mandated drug test. Defendant does not pay

[2] https://www.facebook.com/p/Tiflis-Transportation-61580806541381/ (last visited 4/23/26).

its drivers for any time spent attending mandatory orientation. This unpaid training time is an independent source of minimum wage violations applicable to every driver Defendant employs.

21. When Defendant's drivers separate from the company, Defendant loads their final settlement statements, or final pay stubs, with excessive charges – including recoupment of onboarding costs, security deposit forfeitures, route-deviation penalties, truck detailing, and other employer-benefit expenses – to reduce or eliminate the driver's final pay.

**B. Defendant misclassified Named Plaintiff and others similarly situated as independent contractors.**

22. During all relevant times, Defendant employed Named Plaintiff and others similarly situated within the meaning of the FLSA and Illinois law, though it purported to be in a contractual rather than employment arrangement with them.

23. During all relevant times, Named Plaintiff and others similarly situated were Defendant's employees pursuant to the FLSA and Illinois law though Defendant purported to be in a contractual rather than employment arrangement with them.

24. During all relevant times, and integral to Defendant's freight transportation services business, Defendant utilizes the labor of drivers, like Named Plaintiff and others similarly situated, to carry out transportation services for Defendant's third-party customers. Defendant's drivers perform a central part of Defendant's freight transportation services, the picking up, carrying, and delivery of freight for Defendant's customers. The work of drivers is necessary to Defendant's freight transportation services business and is continuously performed for Defendant.

25. During all relevant times, Defendant classified all of its drivers, including Named Plaintiff and others similarly situated, as independent contractors and required each driver to form a limited liability company before commencing work. Defendant then required each of its drivers to enter into a standard-form ICD Agreement, on behalf of the driver's LLC. Despite this

classification, the nature and substance of the working relationship is that of employer and employee in every material respect.

26. The ICD Agreement Defendant requires its drivers to enter into, including Named Plaintiff and others similarly situated, itself demonstrates pervasive employer control. Among its provisions:

a. Drivers do not own the equipment. The truck and trailer are assigned to the driver by the company.

b. The agreement contains a punitive fine schedule covering dozens of specific driver behaviors, with fines ranging from $100 to $5,000, including fines for speeding, failure to maintain lane, not answering company calls while on duty, idling without APU use, blocking ELD cameras, and "unprofessional behavior."

c. Although the agreement states the driver retains "full control and discretion on any hauling jobs he/she chooses to accept," a separate provision imposes a $500 fine for "unreasonable load refusal without company approval" on the first offense and termination on the second.

d. The company reserves the right to charge $5,000 for failure to return the truck to the company's main parking location in Chicago, plus $2 per mile for retrieval, and may bring criminal charges for commercial vehicle theft.

e. The company dictates specific maintenance intervals (oil changes every 25,000-30,000 miles), requires receipts for all maintenance, and retains the right to inspect the truck and trailer at any time.

f. The company reserves the right to unilaterally modify the agreement terms and penalty schedule at any time.

g. Drivers must maintain a functioning ELD tablet, accept tracking applications, and may not block or cover ELD cameras. The company collects extensive electronic data on drivers including location, speed, hard-braking events, fuel use, and duty status.

h. Drivers are paid only after the company receives payment from the broker or shipper, which may take 30 to 90 days. Payment is conditioned on submission of specific paperwork.

i. Compensation is a flat rate of $0.60 per mile with 0% of gross revenue per mile and no deadhead pay. The driver cannot use the company's equipment for other clients or business purposes without disclosure.

j. If the driver terminates the agreement within thirty days, the withheld security deposit becomes nonrefundable. The driver must provide fourteen days' written notice to take time off and thirty days' written notice to terminate the agreement, or forfeit the entire $2,500 security deposit.

27. During all relevant times, Defendant required Named Plaintiff and all other similarly situated drivers to enter into the ICD Agreement. The ICD Agreement is a non-negotiable contract of adhesion. If a driver does not sign the contract as provided, Defendant does not give them work.

28. During all relevant times, Defendant strictly controlled and regulated its drivers, including Named Plaintiff and others similarly situated. Named Plaintiff and other similarly situated drivers were required to follow the terms of Defendant's onerous ICD Agreement, along

with other written instructions from Defendant. Under these operating requirements and standards, Defendant exerted control and direction on Named Plaintiff and other similarly situated drivers in connection with the performance of their freight transportation services, both in contract and in fact.

29. During all relevant times, Defendant exercised direct control of the manner that Named Plaintiff and other similarly situated drivers performed their work, including controlling their schedules, where they delivered product, how they work, paperwork, contact and communication with dispatch, purchase of fuel, collection of charges from customers, billing, reporting requirements, and related controls exerted by Defendant.

30. At no time during their employment were Named Plaintiff and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of freight, could not and did not receive compensation or otherwise received payment for their delivery other than being compensated by Defendant, and could not and did not negotiate any matters or bargains with any customers.

31. These provisions establish that during all relevant times, Defendant exercised pervasive control over the manner and means of Named Plaintiff's and other similarly situated drivers' work, not merely the end result, and that Named Plaintiff and other similarly situated drivers had no meaningful entrepreneurial opportunity.

32. During all relevant times, Defendant had operational control over significant aspects of Named Plaintiff and other similarly situated drivers. For example, Defendant had operational control over significant aspects of the Named Plaintiff's and other similarly situated drivers' day-to-day functions, the authority to hire, fire, and discipline drivers, including Named

Plaintiff and others similarly situated, the authority to set rates and methods of compensation, and the authority to control work schedules and employment conditions.

33. The significant control Defendant exerted over Named Plaintiff and other similarly situated drivers clearly indicates the existence of an employer-employee relationship.

34. During all relevant times, and based on the economic realities of the relationship between Defendant and Named Plaintiff and other similarly situated drivers, it is clear that Named Plaintiff and other similarly situated drivers were "employees" for purposes of the FLSA and Illinois law.

35. During all relevant times, by illegally misclassifying Named Plaintiff and other similarly situated drivers as independent contractors, Defendant has unfairly benefited from the work of these employees.

**C. Defendant's unlawful deductions and failure to pay minimum wage.**

36. During all relevant times, Defendant subjected Named Plaintiff and other similarly situated drivers to unlawful pay practices including unauthorized deductions from earned wages and failure to pay final compensation.

37. During all relevant times, Defendant subjected Named Plaintiff and other similarly situated drivers to a uniform schedule of recurring and one-time deductions from their earned compensation. These deductions were reflected on driver settlement statements, or paystubs, and included, but were not limited to:

a. $25 per week for "IT Services";

b. $35 per week for "OCAC insurance";

c. Security deposit withholdings of $200 to $300 per week, accumulating to $2,500;

d. Charges for orientation travel, including flights, hotels, and ground transportation;

e. Charges for DOT-mandated drug-test transportation;

f. Charges for work equipment, including tablets;

g. Truck detailing charges;

h. Route-deviation and "extra miles" penalties;

i. Onboarding cost recoupment upon separation; and

j. Security deposit forfeitures upon separation.

38. These deductions were for items that are ordinary costs of Defendant's business, incurred at Defendant's direction and for Defendant's direct benefit. Named Plaintiff and others similarly situated did not authorize these deductions. These were not deductions "to the benefit of the employee" within the meaning of Illinois law.

39. The deductions identified above were uniform across Defendant's driver workforce. For example, fourteen (14) settlement statements, or paystubs, were publicly posted by Defendant on its Facebook page which confirm that every driver is subject to the same $0.60-per-mile rate, the same $25/week IT Services deduction, the same $35/week OCAC insurance deduction, and the same settlement format.[3]

40. In addition to the unlawful deductions mentioned above, during all relevant times, when Defendant's drivers separated from the company, Defendant loaded their final settlement statement—their final paycheck—with excessive charges to reduce or eliminate the driver's final pay. This was a company-wide practice, not an isolated event.

[3] https://www.facebook.com/p/Tiflis-Transportation-61580806541381/ (last visited 4/23/26).

41. For example, Named Plaintiff's last day of work was February 7, 2026. In her final week, Named Plaintiff worked approximately 65 hours. Named Plaintiff's gross wages for that week were $1,596.60. In addition, Defendant held $2,400.00 in accumulated "escrow" funds, i.e. money withheld from Named Plaintiff's earned wages at a rate of $200 to $300 per week throughout her employment.

42. Rather than pay Named Plaintiff the $3,996.60 owed to her ($1,596.60 in final wages plus $2,400.00 in escrow), Defendant applied $4,492.36 in purported charges against her final pay, reducing the balance to negative $495.56, and sent Named Plaintiff a bill for the difference. The purported charges included truck detailing, IT services, OCAC insurance, "extra miles," hotel for orientation, flight to orientation, a tablet, and Uber rides for orientation and drug testing—all employer-benefit expenses.

43. Following a demand letter sent on March 10, 2026, Defendant refunded the accumulated escrow deposit of $2,400.00 but did not provide any payment for Named Plaintiff's final week of work. Named Plaintiff worked no less than sixty-five (65) hours in her final week of work and received $0.00 in wages for that work.

**D. Defendant failed to pay Named Plaintiff and those similarly situated minimum wages for all hours worked.**

44. During all relevant times, Named Plaintiff and others similarly situated were required, as a mandatory condition of employment, to attend a mandatory two-to-three-day orientation at Defendant's base in Illinois. Orientation included company policy instruction, execution of the ICD Agreement and related documents, and a DOT-mandated drug test.

45. Defendant failed to compensate Named Plaintiff and others similarly situated for the time spent attending the mandatory orientation. Orientation is required as a condition of employment and is conducted for the exclusive benefit of Defendant.

46. Defendant's companywide policies described herein resulted in Named Plaintiff and other similarly situated employees performing work that went unpaid.

47. There was no administrative difficulty recoding the time that Named Plaintiff and other similarly situated employees spent performing the otherwise unpaid compensable work.

48. Defendant's failure to pay Named Plaintiff and others similarly situated for time spent at the mandatory orientation resulted in Defendant's failure to pay Named Plaintiff and others similarly situated for all time worked at the minimum wage, in violation of the FLSA and Illinois law.

49. Additionally, when the cumulative effect of these above-mentioned deductions is subtracted from drivers' mileage-based pay, drivers' effective hourly compensation routinely falls below the federal minimum wage of $7.25 per hour and the Illinois minimum wage of $15.00 per hour.

50. As a result of Defendant's companywide policy and/or practice described above, Defendant knew or had reason to know that it was not paying Named Plaintiff and other similarly situated employees the required minimum wage for all time worked.

51. At all relevant times, Defendant was fully aware of the fact that it was legally required to pay for all working hours by the FLSA and Illinois law.

52. Named Plaintiff and other similarly situated drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendant's common scheme of misclassification and applications of unlawful deductions and failure to pay final compensation, were similarly denied compensation in violation of the FLSA, IWPCA, and IMWL.

53. Because Defendant failed to pay Named Plaintiff and other similarly situated drivers the required minimum wage for all hours worked, Defendant violated the FLSA and Illinois law.

54. Such violations were particularly willful because the failure to pay minimum wage was apparent on every settlement statement, or paystub, including drivers' final settlement statement.

**Defendant's Recordkeeping Violations**

55. The FLSA and state law, including Illinois law, require Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; 820 ILCS 105/8, § 8.

56. For example, the FLSA requires employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. *See* 29 C.F.R. § 516.2.

57. Defendant kept records of some hours worked or otherwise had the ability to accurately track hours worked and compensation due through Defendant's hardware, software, and/or systems, by Named Plaintiff and other similarly situated employees.

58. However, because of Defendant's policies of misclassifying its drivers, including Named Plaintiff and others similarly situated, as independent contractors, Defendant's policies of not paying minimum wages for all compensable time described herein, and Defendant's policies

of making unauthorized deductions from Named Plaintiff's and other similarly situated employees' earned wages, Defendant failed to accurately track, keep, or transmit the total compensation due to Named Plaintiff and other similarly situated employees.

59. Defendant willfully and intentionally transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which wrongly classified drivers, including Named Plaintiff and others similarly situated, as independent contractors, wrongly excluded compensable time worked, and included unauthorized deductions from Named Plaintiff's and other similarly situated employees' earned wages. Defendant's failure to correctly classify its drivers, to correctly classify such time as compensable hours worked, and subjecting its drivers to unauthorized deductions, had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff and other similarly situated employees.

60. Defendant willfully and intentionally misclassified its drivers as independent contractors, willfully and intentionally did not record and pay all hours worked, and willfully and intentionally applied unauthorized deductions to Named Plaintiff's and other similarly situated employees' earned wages, in violation of the FLSA and Illinois law, and violated the FLSA's and Illinois law's recordkeeping requirements.

## COLLECTIVE ACTION ALLEGATIONS

61. Named Plaintiff brings this case as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and other similarly situated employees of the following opt-in collective:

> **All current and former individuals who contracted to provide trucking delivery services for Defendant as a driver, and who personally provided trucking delivery services for Defendant, and who have either been classified as independent contractors or have not been paid or treated as employees at any time from three (3) years preceding the**

> **filing of this Complaint through the final disposition of this matter ("FLSA Collective Members").**

62. Named Plaintiff and the FLSA Collective Members were all subject to the same policies and/or practices described above, which resulted in unpaid minimum wages.

63. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid minimum wages, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Named Plaintiff, numerous current and former employees are similarly situated with regard to their claims against Defendant. Named Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

64. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were subjected to and injured by Defendant's common misclassification scheme described above under which Defendant did not pay drivers at least the minimum wage for all hours worked. All have the same claims against Defendant for unpaid minimum wages as well as for liquidated damages, attorneys' fees, and costs.

65. The identities of the putative FLSA Collective Members are readily identifiable through the payroll records Defendant has maintained, and was required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c) & 29 C.F.R. § 516.2.

## CLASS ACTION ALLEGATIONS

66. Named Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and others similarly situated who have similar claims under the laws of the State of Illinois, which are defined as:

> **All current and former individuals who contracted to provide trucking delivery services for Defendant as a driver, and who personally provided trucking delivery services for Defendant, and who have either**

> **been classified as independent contractors or have not been paid or treated as employees at any time from three (3) years preceding the filing of this Complaint through the final disposition of this matter ("Illinois Class" or "Illinois Class Members").**

67. The Illinois Class is so numerous that joinder of all class members is impracticable. The exact number of class members is unknown, but is estimated to exceed forty (40) individuals. The exact number of class members, as well as their identities, are ascertainable from the payroll records Defendant has maintained, and was required to maintain, pursuant to the FLSA and Illinois law.

68. There are questions of law or fact common to the Illinois Class Members. All drivers were subject to the same ICD Agreement, the same per-mile compensation rate, the same deduction schedule, the same mandatory unpaid orientation requirement, and the same final-paycheck practices. The questions of whether Defendant's deductions violate the IWPCA, whether Defendant's failure to pay for orientation time violates IMWL, and whether Defendant's final-paycheck practices violate Illinois law are common to every Illinois Class Member.

69. The questions of law or fact that are common to the Illinois Class Members predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Illinois Class, listed above, are common to the Illinois Class Members as a whole, and predominate over any questions affecting only individual class members.

70. Named Plaintiff's claims are typical of the claims of other Illinois Class Members. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of other Illinois Class Members.

71. Named Plaintiff and the Illinois Class have all been injured in that they have been uncompensated due to Defendant's common policy, and practice, and willful conduct. Defendant's

corporate wide policies and practices affected the Illinois Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the Illinois Class.

72. Named Plaintiff will fairly and adequately protect the interests of the Illinois Class Members. Named Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Illinois Class Members.

73. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Illinois Class in this case.

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring the Illinois Class Members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA Minimum Wage Violations)**

75. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

76. Named Plaintiff brings this claim for violations of the FLSA's minimum wage provisions on behalf of herself and the FLSA Collective Members who will join this case pursuant to 29 U.S.C. § 216(b).

77. Defendant regularly failed to pay Named Plaintiff and the FLSA Collective Members the statutory minimum wage in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

78. The FLSA requires Defendant to pay its non-exempt employees, including Named Plaintiff and the FLSA Collective Members, a minimum wage of not less than $7.25 per hour for all hours worked. 29 U.S.C. § 206(a).

79. However, due to the improper deductions Defendant made from Named Plaintiff's and FLSA Collective Members' pay, the wages of Named Plaintiff and the FLSA Collective Members regularly fell below the minimum wage.

80. Additionally, Defendant failed to pay Named Plaintiff and the FLSA Collective Members for time spent at the mandatory orientation, resulting in Defendant's failure to pay Named Plaintiff and the FLSA Collective Members the statutory minimum wage, in violation of the FLSA. 29 U.S.C. § 206(a).

81. Further, in Named Plaintiff's final week of employment, she worked approximately sixty-five (65) hours but received $0.00 in compensation due to Defendant's improper deductions. As a result, Named Plaintiff was not paid the statutory minimum wage for all hours worked in her last week of employment, in violation of the FLSA. 29 U.S.C. § 206(a).

82. Named Plaintiff and the FLSA Collective Members were not paid the statutory minimum wage for hours worked, resulting in violations of the FLSA.

83. Defendant's practice and policy of not paying Named Plaintiff and the FLSA Collective Members for time spent at the mandatory orientation, Defendant's practice and policy of imposing unauthorized and improper deductions to Named Plaintiff's and the FLSA Collective Members' earned weekly earned wages, including Defendant's practice and policy of imposing improper deductions to Named Plaintiff and FLSA Collective Members' final paycheck, resulted in Defendant's failure to pay Named Plaintiff and the FLSA Collective Members the statutory minimum wage for all hours worked, in violation of the FLSA, 29 U.S.C. § 206(a).

84. At all relevant times, Defendant knew it was required to pay Named Plaintiff and the FLSA Collective Members the statutory minimum wage.

85. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

86. The exact total amount of compensation that Defendant failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant.

87. As a result of Defendant's violations of the FLSA, Named Plaintiff and the FLSA Collective Members were injured in that they did not receive all compensation due to them at the statutory minimum wage pursuant to the FLSA. They are entitled to an award of "unpaid minimum wages" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

**COUNT TWO**
**(Illinois Class – Failure to Pay Final Compensation)**

88. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

89. Named Plaintiff brings this claim for violations of the IWPCA, on behalf of herself and the Illinois Class Members for which certification is sought pursuant to Fed. R. Civ. P. 23.

90. At all relevant times, Named Plaintiff and the Illinois Class Members were "employees" of Defendant within the meaning of the IWPCA.

91. At all relevant times, Defendant was an employer of Named Plaintiff and the Illinois Class Members within the meaning of the IWPCA.

92. Under Section 5 of the IWPCA, when an employee separates from employment, the employer must pay all final compensation – including wages, earned bonuses, and any other compensation owed – by the next regularly scheduled payday. 820 ILCS 115/5.

93. Named Plaintiff's last day of work was February 7, 2026. Her gross wages for her final week were $1,596.60. In addition, Defendant held $2,400.00 in accumulated escrow funds withheld from Named Plaintiff's pay throughout her employment. Defendant failed to pay Named Plaintiff any final compensation by the next regularly scheduled payday or at any time thereafter, in violation of the IWPCA. 820 ILCS 115/5.

94. Upon information and belief, Defendant engages in a company-wide practice of failing to timely pay departing drivers their full final compensation, instead loading final settlement statements, or final paystubs, with excessive charges to reduce or eliminate final pay.

95. Section 14(a) of the IWPCA provides that an employee not timely paid final compensation is entitled to recover the full amount of underpayment, plus statutory damages of 5% of the underpayment for each month it remains unpaid, together with costs and reasonable attorneys' fees. 820 ILCS 115/14(a). The 5% monthly penalty accrues on the unpaid compensation and will continue to accrue for every month Defendant delays payment.

**COUNT THREE**
**(Illinois Class – Unauthorized Deductions from Wages)**

96. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

97. Named Plaintiff brings this claim for violations of the IWPCA, on behalf of herself and the Illinois Class Members for which certification is sought pursuant to Fed. R. Civ. P. 23.

98. At all relevant times, Named Plaintiff and the Illinois Class Members were "employees" of Defendant within the meaning of the IWPCA.

99. At all relevant times, Defendant was an employer of Named Plaintiff and the Illinois Class Members within the meaning of the IWPCA.

100. The IWPCA, 820 ILCS 115/9, strictly limits the circumstances under which an employer may make deductions from employees' wages. Deductions are permissible only when they are (a) required by law, (b) to the benefit of the employee, and (c) authorized in writing by the employee at the time of the deduction. 820 ILCS 115/9.

101. Defendant violated the IWPCA, 820 ILCS 115/9 by making unlawful deductions from Named Plaintiff's and the Illinois Class Members' wages including deductions for IT services, OCAC insurance, security deposit withholdings, orientation travel and lodging, drug-test transportation, tablets, truck detailing, route-deviation penalties, onboarding cost recoupment, and security deposit forfeitures.

102. Named Plaintiff and the Illinois Class Members are entitled to recover the full amount of all unauthorized deductions, statutory damages of 5% per month, and reasonable attorneys' fees and costs. 820 ILCS 115/14(a).

**COUNT FOUR**
**(Illinois Class – Violation of Illinois Minimum Wage Law)**

103. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

104. Named Plaintiff brings this claim for violations of the IMWL, on behalf of herself and the Illinois Class Members for which certification is sought pursuant to Fed. R. Civ. P. 23.

105. Pursuant to 820 ILCS 105/4, an employer is required to pay its employees a minimum wage for all hours worked.

106. The minimum wage in Illinois is $15.00 per hour. 820 ILCS 105/4.

107. During all relevant times, Defendant was an employer within the meaning of the IMWL, 820 ILCS 105/3.

108. During all relevant times, Named Plaintiff and the Illinois Class Members were covered employees within the meaning of the IMWL, 820 ILCS 105/3.

109. As a result of the deductions it took from Named Plaintiff's and the Illinois Class Members' earned wages, and by failing to compensate Named Plaintiff and the Illinois Class Members for time spent at the mandatory orientation, Defendant failed to pay Named Plaintiff and the Illinois Class Members minimum wage for all hours worked in violation of the IMWL. 820 ILCS 105/4.

110. Section 12(a) of the IMWL provides that an employee paid less than the wage to which she is entitled may recover, in a civil action, treble the amount of any underpayment, plus 5% of the underpayment for each month it remains unpaid, together with costs and reasonable attorneys' fees. 820 ILCS 105/12(a).

111. Pursuant to the IMWL, Named Plaintiff and the Illinois Class Members are entitled to recover treble damages on all unpaid minimum wages, 5% monthly penalties, and reasonable attorneys' fees and costs. 820 ILCS 105/12.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff, individually and on behalf of others similarly situated, respectfully requests that this Honorable Court:

A. Authorize Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt in pursuant to 29 U.S.C. § 216(b);

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiff and the Illinois Class Members;

C. Enter judgment against Defendant and in favor of Named Plaintiff, the FLSA Collective Members, and the Illinois Class Members;

D. Award Named Plaintiff and the FLSA Collective Members actual damages for unpaid minimum wages, plus liquidated damages in an equal amount;

E. Award Named Plaintiff and the Illinois Class Members actual damages for all unauthorized deductions, unpaid final wages, unreimbursed necessary expenditures, and unpaid minimum wages under the IWPCA and the IMWL, plus all applicable statutory damages, treble damages, and accruing monthly penalties;

F. Award Named Plaintiff, the FLSA Collective Members, and the Illinois Class Members pre-judgment and post-judgment interest at the statutory rate;

G. Award Named Plaintiff, the FLSA Collective Members, and Illinois Class Members all attorneys' fees, costs, and disbursements incurred in prosecuting this action; and

H. Award Named Plaintiff, the FLSA Collective Members, and the Illinois Class Members any such further and additional relief as this Court deems just and proper.

Respectfully submitted,

**NILGES LEGAL GROUP LLC**

*/s/ Hans A. Nilges*
Hans A. Nilges (Ohio 0076017)
7034 Braucher Street, N.W., Suite B
North Canton, Ohio 44720
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email: hans@ohlaborlaw.com

Robi J. Baishnab (Ohio 0086195)
Nicholas A. Boggs (Ohio 0102430)
700 W. St. Clair Ave., Suite 320
Cleveland, OH 44113
Telephone: (216) 230-2955
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com
nboggs@ohlaborlaw.com

**SIMPSON PLLC**

William "Jack" Simpson
100 Parkgate Dr., Ext., Ste. 205
Tupelo, MS 38801
Telephone: (662) 913-7811
Email: jack@simpson-pllc.com

*Pro Hac Vice Admission Anticipated*

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

*/s/ Hans A Nilges*
*Counsel for Plaintiff*